In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-2176

TANUM SMITH,

*Plaintiff-Appellant,*

*v.*

THE HOPE SCHOOL,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 06-CV-3244-JES-BGC—**Jeanne E. Scott**, *Judge.*

ARGUED FEBRUARY 19, 2009—DECIDED MARCH 30, 2009

Before FLAUM and WILLIAMS, *Circuit Judges*, and
KAPALA, *District Judge.**

FLAUM, *Circuit Judge*. Tanum Smith appeals from the
district court's grant of summary judgment in her suit
against her former employer, The Hope School, for
denying her rights under the Family and Medical Leave
Act. Smith claims that the district court improperly held

* Of the Northern District of Illinois, sitting by designation.

that her application for leave was fraudulent because she altered a health care provider's certification form, arguing that the alteration is irrelevant because Smith was entitled to medical leave based on the authentic, unchanged information. She thus maintains that there is sufficient evidence to reach the jury on her interference and retaliation claim.

For the following reasons, we affirm the district court's grant of summary judgment.

## I. Background

From May 5, 2005 until September 19, 2006, Tanum Smith worked for the Hope School, a residential facility for children with developmental disabilities. Smith began as an individual instruction aide, assigned to work one-on-one with students. During the course of 2006, however, Smith was injured in two separate physical altercations with students. The first incident occurred on April 3, 2006. A student pushed Smith to the ground, struck her, and kicked her. The second incident followed shortly after the first, on June 9, 2006. That time, a student struck Smith in the mouth, causing her to suffer a chipped tooth and neck pain. Smith filed workers' compensation claims in Illinois after each incident.

After the June 9 altercation, Smith visited a chiropractor, Dr. Bryan Taylor, who advised Smith to stay home from work for two or three weeks. Taylor approved her return to work on June 21 so long as she was confined to light duty. Hope School assigned Smith to clerical work

in The Autism Project, a division of the school. After the two attacks, Smith was apprehensive about working with students, but had no contact with them in her new assignment. Attendant to her workers' compensation claims, Smith went to a physician, Dr. Dellheimer, for an independent medical examination. On August 10, Dellheimer approved Smith's return to work without any restrictions. However, just four days later, Dr. Cara Vasconcelles, Smith's primary care physician, gave her a note restricting her to light duty and assignments that would not require her to be around Hope School residents.[1] Vasconcelles has previously treated Smith for mild anxiety, a condition that Smith claimed was triggered when she was around students. Vasconcelles also referred Smith to a neurologist, Dr. Dave Gelber, for her neck pain. Ultimately, Dr. Gelber informed Hope School that Smith did not require any work restrictions.

In response, Hope School transferred Smith to its dietary department. The parties dispute whether this assignment actually kept Smith from interacting with Hope School students. Smith contends that students would enter the dietary department in order to get lunch trays and utensils. Hope School contends that the area was off limits to students. Regardless, Smith reported to the school's human resources department on either August 22 or August 23 that a student named Tia ap-

---

[1] The note instructed Hope School to "please excuse from work [due] to neck pain until cleared by neurologist unless light duty and not around residents."

proached her in the kitchen. Smith went to the human resources department and complained that Hope School had not provided her with a safe work environment, that she was leaving work because of that, and that she would not return until she had a safe job assignment. Hope School claims that it sent Smith a letter the next day, telling her that she should not have contact with students in the dietary area because it was off limits to them, and that if she needed to be out of the kitchen someone would be around to accompany her. The letter continued that Hope School expected Smith to show up for work on Friday, August 25, and that if she did not report for work they would consider it an unexcused absence.

Smith claims that she never received this letter and saw it for the first time when she sat for her deposition. On August 24, Smith left a voicemail message with Vasconcelles' office saying that Hope School had not given her a job assignment that kept her out of contact with residents. On the message, she asked if she could receive FMLA leave. Vasconcelles told her nurse to call Smith back and inform her that "she could try" for FMLA leave. Nevertheless, on August 25 Smith showed up at work and clocked in, although she left only a few minutes later without reporting to anyone. Smith claims that she did report in at work by leaving a voicemail message with Melissa Thompson, a Hope School human resources employee who specialized in workers' compensation claims.

The next Monday, August 28, Smith met with Jennifer Cline, a Hope School human resources employee responsi-

ble for fielding FMLA claims. The parties dispute what happened in this meeting. Cline apparently gave Smith the FMLA paperwork, and told her the forms needed to be completed by her doctor as soon as possible. Cline testified that Smith said she was only considering applying for FMLA leave, while Smith testified that she told Cline she was too stressed to work and that she was not coming back, but was going to see her doctor immediately.[2] Smith asserted that after her conversation with Cline she believed that her request for leave had been approved. Cline testified that she had the opposite impression, that Smith was only considering applying for leave. Smith then left the paperwork from Cline at Vasconcelles' office. Vasconcelles completed the paperwork that same day, although Smith did not pick up the forms until September 6. In the space provided for a health care provider to certify the patient's condition, Vasconcelles wrote that Smith was having "severe recurrent muscle tension [headaches] and [right] neck & arm pain [secondary] to trauma suffered at work."

Smith did not show up for the next scheduled work day, August 29, and did not call her supervisor to report her

---

[2] In her deposition testimony Smith said that in her meeting with Cline she claimed stress both at work and at home. "[Cline] showed me the documentation, the paperwork for it, and she said if this is related to your injuries, this won't work. I said I am stressed. I am depressed. I am stressed. You don't know what I am going through. She said it can't be related to work. I said, okay, fine, I am stressed at home. I have stuff going on at home too then. I said I can't do this anymore."

absence. In response, the Hope School sent Smith
another letter telling her about security provisions at the
school if she felt unsafe at work, and telling her once
more that failing to show up at work would count as
an unexcused absence.

On September 6, Smith picked up her FMLA paperwork
from Vasconcelles' office. Neither party disputes that
upon receiving the form, Smith added to Vasconcelles'
description of her condition on the health care provider's
certification form: Below Vasconcelles' narrative,
Smith added the words "plus previous depression."
Importantly, Vasconcelles had never diagnosed Smith with
depression, nor has any other doctor diagnosed or
treated Smith for that condition. Smith had not consulted
with Vasconcelles before adding that condition to the
form.[3]

Smith faxed the altered form to the Hope School. When
Cline and Thompson reviewed her paperwork, they
suspected that the health care provider's certification
had been altered. Cline then asked another employee
from the human resources department to call Vascon-

---

[3] This was not the only change that Smith made to the
forms: She also backdated her portion of the signature line of
the FMLA form to August 25, despite the fact that she did not
pick up the forms from the Hope School until August 28.
Finally, she filled out a separate "Attending Physician's State-
ment" in its entirety, listing diagnoses of muscle tension,
chronic headaches, and depression. Dr. Vasconcelles' office
later annotated the form to confirm that she had not filled it out.

celles' office and ask about the possible alteration. That office confirmed the alteration.[4] Cline then contacted a representative from the Department of Labor, who according to Hope School advised them that they could deny Smith's request for leave because she did not give timely notice and altered FMLA documentation. On September 11, Cline denied Smith's request for FMLA leave and mailed her a formal notice of the denial, citing Smith's altered paperwork and failure to provide timely notice.

Hope School also began disciplinary proceedings against Smith because of her absences from work. Hope School's employee policy manual, which they gave to Smith when she began work in 2005, informs employees that three consecutive unexcused absences is grounds for termination. According to their records, Smith had been absent from Hope School for at least three con-

---

[4] This in itself was a violation of the FMLA, because at the time an employer's only recourse in such a circumstance was to request that the employee seek a second opinion or have their own health care provider investigate the alleged alteration. Smith's complaint does not allege any injury from this breach, however, and the FMLA provides no remedy for such a violation unless it interfered with or restrained an employee's rights under the act. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 909-10 (7th Cir. 2008). We note that the applicable regulation has now been amended and an employer is allowed to contact an employee's health care provider for the limited purpose of authenticating or clarifying the information contained in the certification. *See* 29 C.F.R. 825.307(a) (effective Jan. 16, 2009).

secutive days and was in violation of this policy. On September 6, Hope School mailed Smith a letter telling her that they had scheduled her termination hearing for September 12. The parties dispute whether this proceeding was scheduled before or after Smith turned in her FMLA paperwork to Hope School. Smith did not attend the September 12 meeting, and so Hope School rescheduled for September 14. Smith attended that meeting, where she learned that Hope School was contemplating terminating her because of her absences from work. She also attended an additional disciplinary meeting on September 19. At that meeting, Smith asked about the status of her request for FMLA leave; Hope School responded that they had denied her request, citing once again her alteration of the paperwork and her failure to provide timely notice of her request. As a result of that meeting, Hope School terminated Smith's employment.

On October 24, 2006, Smith filed a two-count complaint against Hope School. Count one of her complaint claimed that Hope School had denied her rights under the FMLA by denying her leave and terminating her in retaliation for requesting leave. Count two alleged that she was terminated in retaliation for filing Illinois workers' compensation suits. Hope School moved for summary judgment at the close of discovery, and the district court granted that motion on April 10, 2008. Smith now appeals.

## II. Discussion

This court reviews a district court's grant of summary judgment de novo. *Woodruff v. Mason*, 542 F.3d 545, 550 (7th Cir. 2008). Summary judgment is appropriate when the evidence submitted, viewed in the light most favorable to the non-moving party, shows "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). This court construes all facts and draws all reasonable inferences from the record in favor of the non-moving party. *Bell v. Duperrault*, 367 F.3d 703, 707 (7th Cir. 2004). However, "we are not required to draw every conceivable inference from the record." *Id.* Instead, we draw only the reasonable inferences. *See McDonald v. Village of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004).

### A. Interference Claim

The district court's summary judgment opinion found that Smith's alteration of Vasconcelles' health care provider certification form invalidated her application for leave under the FMLA. Thus, Hope School did not interfere with her rights under the act or retaliate against her for asserting them. The FMLA entitles an employee to twelve weeks of leave every twelve-month period if she is afflicted with "a serious health condition" which renders her unable to perform her job. 29 U.S.C. § 2612(a)(1)(D). The FMLA also forbids employers from retaliating against employees who claim benefits

under the act. 29 U.S.C. § 2615(a)-(b); *see also Burnett v. LFW, Inc.*, 472 F.3d 471, 477 (7th Cir. 2006).

To prevail on an FMLA interference claim, an employee need only demonstrate that her employer has denied her leave under the act; she need not show discriminatory intent on the part of the employer. *Burnett*, 472 F.3d at 477. As for the elements of an interference claim, an employee must demonstrate that: (1) she was eligible for FMLA protection; (2) her employer was covered by the FMLA; (3) she was entitled to FMLA leave; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her benefits to which she was entitled. *Id.* The district court issued summary judgment because Smith was not entitled to FMLA leave. Hope School argues on appeal that Smith also failed to provide sufficient notice and does not have a qualifying condition.

An employee is entitled to FMLA leave if she can demonstrate that she suffers from a "serious health condition" that prevents her from fulfilling the functions of her job. 29 U.S.C. § 2612(a)(1)(D). The FMLA defines an employee with a "serious health condition" as one who has "an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). Applicable regulations state that continuing treatment by a health care provider includes conditions that require examinations and evaluations over a period of time. 29 C.F.R. § 825.115. However, an employer is allowed to require an employee to document her con-

dition before granting FMLA leave, and can require her to submit certification of her condition from her health care provider. 29 C.F.R. § 825.305(a). If an employee fails to provide such certification in a timely manner, then an employer is entitled to deny the employee FMLA leave. 29 C.F.R. § 825.313.

In this case, Smith only made one attempt to submit her certification paperwork. Consequently, the issue here is whether Smith's alteration of her certification form made her ineligible for FMLA leave. Smith's arguments on this point are centered on a federal regulation governing job restoration and maintenance of health benefits provision for employees who fraudulently obtain leave. She concedes, however, that an employer can deny FMLA leave to an employee who seeks to obtain such leave fraudulently. She argues, citing the common law definition of fraud, that because Dr. Vasconcelles recommended that she obtain leave she was entitled to it under the FMLA and thus could not have fraudulently obtained it. On this theory, an employee only fraudulently obtains leave if she alters a form that would not otherwise entitle her to it. In other words, it's only fraud if her falsification pushes her case across the finish line.

This is an imprecise way of framing the issue, because the question here is not fraud necessarily but whether Smith provided an adequate certification of her condition such that Hope School was bound to honor her request for FMLA leave. Smith's position has some superficial appeal, however, as it protects an employee's right to leave based on an actual medical condition, setting

any falsehood in the document to one side. Smith fails to explain why an employer should be required to read the false conditions out of the certification, however. Nor do we see how such a requirement can be sensibly applied in cases beyond the present one. As the district court explained, there is little precedent governing this issue. Other courts have addressed the far more straight-forward issue of whether an employer can fire an employee for fraudulent use of FMLA leave, or for submitting entirely false paperwork to obtain FMLA leave. *See Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 680-81 (7th Cir. 1997); *Blackburn v. Potter*, 2003 WL 1733549 (S.D. Ind. Mar. 31, 2003). The question of whether an employer can deny an employee FMLA leave to which she might otherwise be entitled because she submitted false paperwork presents a slightly different question. A district court in the Tenth Circuit has come as close as any court has to ruling on this question. In *Yasmeen v. Hospira, Inc.*, 2007 WL 3254923 (D. Utah Nov. 2, 2007), an employee requested FMLA leave to care for her sick husband. She had her husband's doctor fill out the FMLA certification paperwork, but later noticed that the doctor had not filled in the correct dates for the leave necessary (at least in her view). She called the doctor's office and when he was unavailable, claims that she had his resident change the dates on the form. She was ultimately terminated for submitting the altered paperwork. The district court held that the alteration of the FMLA form provided the employer with valid grounds for termination, as the employee's decision to submit the altered form was evidence of dishonesty. This was so even if the unaltered form would have entitled her to leave.

Of course, losing a job is a foreseeable consequence of dishonesty. Here, by contrast, Smith was not fired for being dishonest but for taking leave to which she was not entitled. The predicate question of whether Hope School rightly concluded that they did not need to honor Smith's request for leave thus presents us with a slightly different question from those that courts have previously addressed. Nevertheless, we agree with the district court's summary judgment ruling below: In a case such as this, where an employee adds to a medical care provider's certification form a condition that she has not been diagnosed with, without the knowledge or approval of her physician, an employer can deny her request for FMLA leave. We are convinced that Smith's proposed rule would have the effect of encouraging applicants to dress up an application for leave by adding non-existent conditions. In this case, the phony diagnosis was confirmed with a single improper phone call. At the time, however, an employer following the rules could confirm that an employee had submitted a false diagnosis only by requesting an expensive and time-consuming second opinion from a different physician. Or, perhaps, the falsehood would go undetected alto-gether, and in the marginal cases an employee whose actual medical condition did not merit FMLA leave would receive it.

Smith claimed in her deposition testimony in this case that it was not her intention to alter the paperwork: "I was just trying to be thorough. I was not trying to alter. If I was trying to alter, I mean look at that. My hand-writing stands out like a sore thumb, you know." Smith

knew, however, that neither Vasconcelles nor any other doctor had diagnosed her with depression or treated her for it, and she admitted as much in her deposition.[5] She also made the same self-diagnosis of depression, twice in fact, on the "Attending Physician's Statement" that she filled out entirely on her own but submitted in Vasconcelles' name. Under these circumstances, where multiple forms purporting to contain a physician's diagnosis were in fact altered or filled out completely by a patient who knew that the physician had made no such diagnosis, we conclude that Smith was presenting false certification paperwork and thus was not entitled to FMLA leave.[6]

---

[5] The relevant part of the deposition reveals that any depression in this case was self-diagnosed:

Q: You have said that you were depressed. Did anybody diagnose you with despression?

A: No. When I went to Dr. Vasconcelles, she had me update my history form, you know, those forms they give you when you go in, and I put it on there, but she never talked to me about it. But I knew I was, I knew I was stressed.

Q: Did anybody prescribe any treatment, medication, or therapy for depression to you before this?

A: No. She just prescribed medicine for anxiety. But I told her in that appointment that I was becoming depressed.

[6] We likewise agree with the district court that an employer presented with false certification paperwork is not required to seek a second opinion. The FMLA provides that an employer who questions the validity of the certification can seek a

(continued...)

We wish to emphasize the limited nature of today's ruling, however. The record here presents an especially strong inference that an employee submitted false paper-work to her employer. Smith not only altered the FMLA paperwork she faxed to the Hope School, but she back-dated the form and submitted a second form that her physician had never filled out or signed. In these circumstances, we hold that an employee is not entitled to FMLA leave on the basis of the falsified paperwork. We obviously do not reach the question of whether other, more insignificant alterations, such as correcting a typo-graphical error or correcting or adding to a portion of the form with the knowledge and approval of a treating physician, would result in a similar ruling. Nor, because there was only a single attempt to submit certification paperwork in this case, do we need to consider the result if an employee re-submitted authentic, unaltered paperwork certifying her request for leave after first submitting altered, false documentation.

---

[6] (...continued)

second opinion at the employer's expense. 29 U.S.C. § 2613(c)(1). These provisions reference an "opinion of a second health care provider" and thus presume that what is being ques-tioned is in fact a health care provider's opinion. The statute thus refers to instances where the employer questions whether a doctor's diagnosis is correct, rather than instances where the employer questions whether the doctor even made the diagnosis in the first place.

**B. Retaliation Claim**

Smith's retaliation claim is very closely linked to her FMLA interference claim. An employee who alleges that her employer retaliated against her for exercising her rights under the FMLA can proceed under the direct or indirect methods of proof familiar from employment discrimination litigation. *See Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004). An employee proceeding under the direct method must demonstrate that her employer intended to punish her for requesting or taking FMLA leave. *King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir. 1999). The indirect method, familiar from Title VII cases, requires the employee to produce evidence that she was treated differently from similarly situated employees who did not request FMLA leave, even though she was performing her job satisfactorily. *Hull v. Stoughton Trailers, LLC*, 445 F.3d 949, 951 (7th Cir. 2006). Smith has chosen to proceed under the direct method in this case, and made no effort to avail herself of the indirect method.

Her evidence of retaliation is fairly straightforward: She was fired for not being at work while she believed she was on FMLA leave. Hope School asserts that she was not fired for taking FMLA leave but rather for violating the school's policy prohibiting employees from having three consecutive unexcused absences. If her request for leave was invalid, as argued above, then Smith was not engaging in statutorily protected activity and thus could not have been fired for asserting her rights under the FMLA. *See Gay v. Gilman Paper Co.*, 125

F.3d 1432, 1436 (11th Cir. 1997) ("When notice of a possible serious medical condition is deliberately withheld and false information is given, it cannot be said that an employee has been terminated in violation of the FMLA."). The Department of Labor regulations governing job restoration following FMLA leave include a similar rule: "An employee who fraudulently obtains FMLA leave from an employer is not protected by FMLA's job restoration or maintenance of health benefits provisions." 29 C.F.R. § 825.216(d). As we have already held that Hope School was entitled to deny Smith's request for FMLA leave because she submitted false paperwork, we also hold that they were entitled to terminate her employment because of her unexcused absences from work during this period.

Hope School also argues that this court could affirm summary judgment because of Smith's failure to give adequate notice and because she lacks a qualifying medical condition. As we have already held that Smith was neither entitled to FMLA leave nor fired in retaliation for asserting her rights under the act, we have no need to consider these alternative grounds.

## III. Conclusion

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment.

---