In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-2283

DOROTHY E. GOELZER,

*Plaintiff-Appellant*,

*v.*

SHEBOYGAN COUNTY, WISCONSIN and
ADAM N. PAYNE,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 07 C 451—**Charles N. Clevert, Jr.**, *Chief Judge*.

ARGUED OCTOBER 6, 2009—DECIDED MAY 12, 2010

Before BAUER, WOOD, and WILLIAMS, *Circuit Judges*.

WILLIAMS, *Circuit Judge*. After two decades of employment with her county government, Dorothy Goelzer was fired from her job. Her supervisor informed her of the termination decision two weeks before she was scheduled to begin two months of leave under the Family and Medical Leave Act (FMLA). This leave did not mark the first time Goelzer was away from work on

FMLA leave, as Goelzer had taken a significant amount of authorized FMLA leave during the four preceding years to deal with her own health issues and those of her mother and husband. After she lost her job, Goelzer brought this suit and alleged that her employer had interfered with her right to reinstatement under the FMLA and had retaliated against her for taking FMLA leave. The defendants contend that her supervisor simply decided to hire another person with a larger skill set. The district court agreed with the defendants and granted summary judgment against Goelzer. We, however, conclude that Goelzer has marshaled enough evidence for this case to reach a trier of fact, including comments suggesting her supervisor's dissatisfaction with her use of FMLA leave, her positive performance reviews, and the timing of her termination. Therefore, we reverse the entry of summary judgment against her.

## I. BACKGROUND

Sheboygan County, Wisconsin hired Dorothy Goelzer in 1986 to serve as a Clerk Typist in its office of the Register of Deeds. Two years later, Goelzer applied for the position of Administrative Assistant to the County Board Chairperson and received the job. Goelzer's boss worked part-time and was only present intermittently in the office.

In 1997, the County Board enacted an ordinance that created a full-time Administrative Coordinator position. The Board hired a new Administrative Coordinator the next year, and Goelzer's position was converted to

that of Administrative Assistant to the County Admin- istrative Coordinator. The Board hired Adam Payne as its Administrative Coordinator in January 1999. Goelzer became the administrative assistant to Payne, who unlike her previous boss was in the office full-time, and Goelzer also assisted the County Board Chairperson.

Payne consistently gave Goelzer good performance reviews. For the 2000 year, Payne rated Goelzer with an overall performance score of 3.8 on a scale of zero to five, and Goelzer received a merit pay increase of 1.5%. Payne commented in that year's performance evaluation that Goelzer was "rarely absent," and he gave her a 4.0 in the "attendance" category. Payne gave her a 4.0 for attendance the following year and noted she "is rarely absent (36 hours of sick leave in 2001)." Goelzer received an overall rating of 3.72 in that evaluation and again received a merit increase.

Goelzer began to have significant health issues in 2002. She had eye surgery in July and took approximately a month of FMLA leave during her surgery and recov- ery. She also had multiple doctors' appointments in the months before and after her surgery. All in all, she used 312.50 hours of sick leave in 2002, the equivalent of nearly eight forty-hour weeks. Payne wrote in Goelzer's 2002 performance evaluation that, "[t]hough Dorothy has had an excellent record in the past, (36 hours of sick leave in 2001), she utilized 312 hours or 39 days of sick leave in 2002."

Goelzer continued to have health problems in 2003. She had another eye surgery that year and took two weeks

of FMLA leave as a result. She also had many doctors' appointments throughout the year. Goelzer took time off on thirty-two different days during 2003 for her health issues and used a total of 176.50 hours of leave. Payne commented on Goelzer's use of sick leave again in that year's performance evaluation, stating: "Dorothy utilized 176.50 hours or 22 days of sick leave in 2003." He gave her an overall rating of 3.36, with a 3.5 in the attendance category. He did not award her a merit pay increase. Goelzer disagreed with some of the reasons Payne gave for not awarding her a merit increase, and she wrote Payne a memorandum detailing her position. Payne responded on February 5, 2004 in a memorandum to Goelzer that said in part:

> On page 3 of 4, you have denoted goals you believe to have accomplished. As we discussed during your performance review and I have noted in your annual performance review, your perspective is different than mine.

> I am very pleased that you understand the importance of having a user-friendly filing system in place. As you mentioned, you were out of the office having eye surgery in 2002 and 2003. In fact, the past two years, use of sick leave and vacation combined, you were out of the office 113 days. As the only support person in the office, this has presented challenges in the functionality and duties associated with the office.

Goelzer used 94 hours of sick leave in 2004. She received a merit increase of 1.5% after her 2004 evaluation. The

next year, Goelzer's health was stable, but her mother's health was not. Goelzer took FMLA leave on nine days in 2004 for appointments related to her mother or husband, and her 2005 FMLA applications included requests for intermittent leave to care for her mother. Goelzer received a 1.25% merit increase after 2005. Goelzer stated in an affidavit that when she asked why she did not receive a higher merit pay increase, Payne responded that she had missed a lot of time at work due to appointments with her mother.

Goelzer learned in 2006 that she would need foot surgery that year. On May 10, 2006, Goelzer submitted an FMLA leave request for time away from work from September 22, 2006 to November 20, 2006 for her foot surgery and recovery. At Payne's request, Goelzer provided a medical certification for the foot surgery to Human Resources Director Michael Collard on June 1, 2006. Collard wrote directly to Goelzer's doctor five days later and asked whether Goelzer could return to light duty office work before November 19, 2006, and if so, when. Goelzer's doctor responded that she would be totally disabled and unable to work during that time period. The County eventually approved Goelzer's FMLA leave request on August 8.

On August 15, 2006, the Sheboygan County Board passed an ordinance that converted the position of County Administrative Coordinator to that of County Administrator. The Board also appointed Payne to serve as County Administrator. With this change, Payne now had the power under Wisconsin Statute § 59.18(3) to

discharge Goelzer on his own, a power he did not previously have. Within the next ten days, Payne told Collard that he wanted to meet to discuss options for terminating Goelzer's employment. In preparation for the August 25, 2006 meeting, Collard prepared notes related to options, with a list that included "term outright, just need to change," "eliminate position," "Change T/O—reshuffle—create new position not qualified for," "Raise expectations & evaluate," and "Retaliation for FMLA?".

On September 8, 2006, two weeks before Goelzer was to commence FMLA leave for her foot surgery, Payne discharged Goelzer with an effective date of November 30, 2006. (Payne placed Goelzer on paid leave until November 30, 2006 so that she would receive the FMLA leave that had been previously approved.) At the time, Goelzer had used 67 hours of leave in 2006 and was scheduled to take an additional 328 hours related to her foot surgery. Goelzer's discharge document stated:

> Under Section 59.18(3) of the Wisconsin Statutes, and Section II N of the County Administrator's job description, the County Administrator has the right to appoint an administrative secretary of his own choosing. The County Administrator has decided to appoint an Administrative Assistant other than the current incumbent in that position, Dorothy Goelzer. Goelzer's employment with the County must therefore be terminated. This action is not based on any infraction committed by Goelzer, and should not be considered a disciplinary action.

Payne did not immediately replace Goelzer. Instead, he first utilized an unpaid college intern. On January 16, 2007, the County Board enacted an ordinance that eliminated Goelzer's former position and replaced it with the position of "Assistant to the Administrator." It also increased the pay grade for the role from Grade 6 to Grade 8. Payne hired Kay Lorenz as the Assistant to the Administrator on March 19, 2007.

Goelzer filed this lawsuit in federal court alleging that the County and Payne violated the FMLA when they did not restore her to her position after her FMLA leave and instead fired her, and that they discriminated against her in violation of the FMLA when they did so. She also brought a breach of contract claim alleging that her discharge breached her contractual rights under Sheboygan County's Policies and Procedures Manual. The district court granted summary judgment in favor of the defendants on all of Goelzer's claims. Goelzer appeals, raising only the FMLA determination.

## II. ANALYSIS

We review the district court's grant of summary judgment de novo, and we view all facts and draw reasonable inferences therefrom in the light most favorable to the nonmoving party. *Burnett v. LFW, Inc.*, 472 F.3d 471, 477 (7th Cir. 2006). Summary judgment is only appropriate when the pleadings, discovery materials, disclosures, and affidavits demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled

to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The FMLA allows an eligible employee with a serious health condition that renders the employee unable to perform her position to take twelve workweeks of leave during each twelve-month period. 29 U.S.C. § 2612(a)(1)(D). An employee may also utilize this leave to care for certain  immediate relatives, including a parent or spouse, with a serious health condition. *Id*. § 2612(a)(1)(C). Under the FMLA, an employee on leave is entitled to the right to be restored to the same or an equivalent position that she had before she took qualifying leave. *Id*. § 2614(a)(1)-(2). An employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise" any FMLA rights. *Id*. § 2615(a)(1).

In addition, the FMLA affords protection to employees who are retaliated against because they exercise rights protected by the Act. *Lewis v. Sch. Dist. #70*, 523 F.3d 730, 741 (7th Cir. 2008). Pursuant to 29 U.S.C. § 2615(a)(2), it is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this sub-chapter." The Act also makes it unlawful to "discharge" or "discriminate" against a person for taking part in pro-ceedings or inquiries under the FMLA. 29 U.S.C. § 2615(b). We have construed these provisions as stating a cause of action for retaliation. *See, e.g., Lewis*, 523 F.3d at 741; *Kauffman v. Federal Express Corp.*, 426 F.3d 880, 884 (7th Cir. 2005).

Goelzer argues on appeal that she can establish both interference and retaliation under 29 U.S.C. §§ 2614(a)(1) and 2615(a)(2), respectively. The defendants state in their response brief that they "take issue" with Goelzer's assertion that her complaint included claims for both interference and retaliation. They state that they understood Goelzer's complaint to assert that they discriminated against her for having exercised her FMLA rights, which appears to be a statement that they only read her complaint to allege retaliation.

Goelzer's Amended Complaint stated in relevant part:

16. Under 29 U.S.C. § 2614(a)(1), Dorothy was entitled to be restored to her position with Sheboygan County or an equivalent position with Sheboygan County after her return from medical leave.

. . .

21. By the above-described intentional conduct, Sheboygan County and Payne violated the FMLA by discriminating against Dorothy for exercising her FMLA rights and by refusing to return her to her position or an equivalent position following her leave.

Paragraph 16 explicitly cites to 29 U.S.C. § 2614(a)(1), the statutory provision for FMLA interference claims, and the allegation in the paragraph mirrors that provision's language. Paragraph 21, on the other hand, uses the language of the FMLA retaliation provision. *See* 29 U.S.C. 2615(a)(2). So to the extent the defendants are arguing

that Goelzer waived an interference or retaliation cause of action by failing to raise either in the complaint, we disagree. We also note that the district court addressed both interference and retaliation in its summary judgment ruling. We now turn to Goelzer's argument that the entry of summary judgment against her should be reversed on both theories.

### A. FMLA Interference

We first address Goelzer's interference argument. The plaintiff carries the burden of proving an FMLA interference claim. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 908 (7th Cir. 2008). To establish such a claim, an employee must show that: (1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to take leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled. *Burnett*, 472 F.3d at 477. There is no dispute regarding the first four requirements; it is clear that the FMLA allowed Goelzer to take the leave that she did. The only issue is whether the defendants fired her to prevent her from exercising her right to reinstatement to her position. *See Simpson v. Office of the Chief Judge of the Circuit Court of Will County*, 559 F.3d 706, 712 (7th Cir. 2009) ("Firing an employee to prevent her from exercising her right to return to her prior position can certainly interfere with that employee's FMLA rights.").

An employee's right to reinstatement is not absolute. The FMLA allows an employer to refuse to restore an employee to the "former position when restoration would confer a 'right, benefit, or position of employment' that the employee would not have been entitled to if the employee had never left the workplace." *Kohls v. Beverly Enters. Wisc., Inc.*, 259 F.3d 799, 805 (7th Cir. 2001) (citing 29 U.S.C. § 2614(a)(3)(B)); *see also* 29 C.F.R. § 825.216(a) ("An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee has been continuously employed during the FMLA leave period."). In other words, an employee is not entitled to return to her former position if she would have been fired regardless of whether she took the leave. *See Breneisen v. Motorola, Inc.*, 512 F.3d 972, 978 (7th Cir. 2008).

The question at this stage of the proceedings, then, is whether a jury could find that the defendants did not reinstate Goelzer because she exercised her right to take FMLA leave. *See Kohls*, 259 F.3d at 805; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial"). Payne and the County maintain that the answer is "no," as their position is that Goelzer's employment would have been terminated regardless of whether she took FMLA leave. They maintain that after Payne received a promotion to County Administrator, he simply exercised his new authority to replace Goelzer on his own with a person of his choosing. They

stress that before his promotion, Payne would have needed the approval of the County through its Executive Committee before he could terminate Goelzer's employment. With the promotion to County Administrator, however, Payne could now make the termination decision on his own. *See* Wis. Stat. § 59.18(3). And three weeks after he assumed his new role, Payne notified Goelzer she was losing her job, a decision he says had nothing to do with Goelzer's use of FMLA leave.

Michael Collard, the County's Human Resources Director, supports Payne's account. Collard asserts that Payne had expressed frustration for some time that Goelzer was not performing the tasks Payne had envisioned for her, and Collard also says that Payne had expressed a desire for an assistant with a greater skill set. In addition, although Payne did not immediately replace Goelzer and instead first utilized a college intern, Payne maintains that in the longer term he wanted the position to be enhanced to allow him to assign more sophisticated tasks beyond those that he says Goelzer could handle.

The defendants' account provides one possible explanation for the termination decision, and a jury might well choose to believe it. But there is another possibility as well. Goelzer contends that she lost her job because Payne and the County were not happy that she had exercised her right to take FMLA leave. Indeed, she used 312 hours of FMLA leave in 2002, 176 hours in 2003, 94 hours in 2004, at least 70 hours in 2005, and she was on track to use nearly 400 hours in 2006. Again, there is

no dispute that the FMLA authorized Goelzer to take all of this leave. Even though the leave was authorized, we conclude that the evidence Goelzer introduced in response to the defendants' motion for summary judgment could lead a jury to find that she was denied reinstatement not because Payne simply wanted a different assistant, but because she had exercised her right to take leave under the FMLA.

A jury might be swayed by comments Payne made that could suggest frustration with Goelzer's use of FMLA leave. In her 2002 performance evaluation, for instance, Payne explicitly contrasted Goelzer's use of FMLA leave with her past "excellent" attendance, saying, "[t]hough Dorothy has had an excellent attendance record in the past, (36 hours of sick leave in 2001), she utilized 312 hours or 39 days of sick leave in 2002." Payne gave her a 3.5 rating in the "attendance" category in 2002. He noted her use of sick leave in the following year's performance evaluation as well, stating "Dorothy utilized 176 hours of 22 days of sick leave in 2003," and he gave her an overall rating of 3.36 that year but did not award a merit increase. Notably too, when Goelzer asked Payne in 2006 why she did not receive a higher merit increase based on her 2005 performance, she says that Payne responded that she had missed too much time from work to attend to appointments with her mother.

A jury might also look to the memorandum Payne wrote in 2004 in response to Goelzer's view that she should have received a merit increase, where he said in part: "you were out of the office having eye surgery in

2002 and 2003. In fact, the past two years, use of sick leave and vacation combined, you were out of the office 113 days. As the only support person in the office, this has presented challenges in the functionality and duties associated with the office." A jury might view this memorandum as evidence that Goelzer lost her job because she exercised her right to take FMLA leave, as it might Payne's comments in an evaluation he wrote in January 2006: "On occasion, I have been concerned with office and phone coverage. Dorothy had numerous appointments the past year and needs to be more cognitive of the time she is away from her desk or corresponding with others on non-related work activities." The defendants do not dispute that the FMLA protected Goelzer's attendance at these appointments, and a jury could look to those comments as indication that Payne was not pleased Goelzer had been absent for many FMLA-covered appointments, even though she was permitted to take them by the Act and an employer is not to interfere with that right.

Moreover, although Payne now maintains he had concerns about Goelzer's skill set and performance, he consistently gave her favorable performance reviews. He says now that her satisfactory performance ratings reflect his "lowered expectations" of her abilities, but the performance ratings themselves do not speak of lowered expectations, and a jury would not be compelled to credit this explanation. In fact, just over seven months before Payne told Goelzer she was being terminated, he had conducted Goelzer's annual performance review and concluded that her performance met or exceeded expectations in all areas.

A factfinder might also consider that, if Payne had serious problems with Goelzer's performance, he could have asked the County Board to terminate Goelzer's employment before he received the promotion, yet he did not do so. In addition, although Payne asserts that he wanted an assistant with a larger skill set, there are no documents evidencing a plan to restructure the assistant position before Goelzer's termination. And, of course, Payne told Goelzer that she was losing her job two weeks before she was scheduled to take two months of FMLA leave. *See Kohls*, 259 F.3d at 806. In short, we are left with two competing accounts, either of which a jury could believe. So summary judgment is not appropriate, and we reverse its grant.

### B.  FMLA Retaliation

Goelzer also contends her FMLA retaliation theory should proceed to trial. The FMLA provides that it is unlawful for an employer "to discharge or in any manner discriminate against" any employee for opposing any practice the FMLA makes unlawful. 29 U.S.C. § 2615(a)(2). The difference between a retaliation and interference theory is that the first "requires proof of discriminatory or retaliatory intent while [an interference theory] requires only proof that the employer denied the employee his or her entitlements under the Act." *Kauffman*, 426 F.3d at 884; *see also King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir. 1999). To succeed on a retaliation claim, the plaintiff does not need to prove that "retaliation was the *only* reason for

her termination; she may establish an FMLA retaliation claim by 'showing that the protected conduct was a substantial or motivating factor in the employer's decision.' *Lewis*, 523 F.3d at 741-42 (quoting *Culver v. Gorman & Co.*, 416 F.3d 540, 545 (7th Cir. 2005)).

A plaintiff may proceed under the direct or indirect methods of proof when attempting to establish an FMLA retaliation claim. *Burnett*, 472 F.3d at 481. Under the direct method, the only method Goelzer employs, a plaintiff must present evidence that her employer took a materially adverse action against her because of her protected activity. *Id.* If the plaintiff's evidence is contradicted, the case must proceed to trial unless the employer presents unrebutted evidence that it would have taken the adverse action against the plaintiff even if it did not have a retaliatory motive. *Id.* (citing *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002)). That is, the plaintiff survives summary judgment by " 'creating a triable issue of whether the adverse employment action of which she complains had a discriminatory motivation.' " *Lewis*, 523 F.3d at 741 (quoting *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 729 (7th Cir. 2005)).

Payne and the County maintain that a jury could not conclude that they intentionally discriminated against Goelzer for using FMLA leave. In addition to the evidence to which she pointed in support of her interference claim, Goelzer also directs our attention to Human Resources Director Collard's inquiry to Goelzer's physician that asked "[w]hether Ms. Goelzer would be

physically able to work light duty in an office environment prior to November 19, 2006, and if so, when would be an appropriate time that we would expect her to return." As Goelzer points out, 29 C.F.R. § 825.307 provides that "[i]f an employee submits a complete and sufficient certification signed by the health care provider, the employer may not request additional information from the health care provider." Goelzer submitted a complete and signed certification, so at the time Collard contacted Goelzer's physician without her permission, that contact likely violated the FMLA. *See Smith v. Hope School*, 560 F.3d 694, 698 n.4 (7th Cir. 2009). (The regulation has since been amended to add that "the employer may contact the health care provider for purposes of clarification and authentication of the medical certification . . . after the employer has given the employee an opportunity to cure any deficiencies . . . ." 29 C.F.R. § 825.307 (effective January 16, 2009); *see Smith*, 560 F.3d at 698 n.4). Goelzer does not assert an independent claim for relief based on any violation of this regulation, nor does the FMLA provide one unless the violation interfered with or restrained an employee's rights under the statute. *See Smith*, 560 F.3d at 698 n.4. Instead, Goelzer asserts that Collard's inquiry to her doctor supports her claim that the defendants had retaliated against her for using her FMLA leave.

Even if Collard's inquiry is put to the side, there is enough evidence in the record for a jury to find that the defendants fired Goelzer because she had utilized FMLA leave and not because Payne wanted to hire a new person with more skills. For example, Goelzer had

received positive performance reviews, and none suggest on their face that they were the result of any "lowered expectations" from Payne. Payne denies that he made any oral derogatory comments regarding Goelzer's FMLA use, but that is for the jury to decide, and in any event the jury might view his written comments on Goelzer's performance evaluations regarding her use of FMLA leave as evidence that her use of FMLA leave motivated the termination decision. Payne also communicated the termination decision after he knew Goelzer planned to be out for two months on FMLA leave, and she had utilized a significant amount of FMLA leave in the years preceding the decision. Although the defendants disclaim any causal connection between Goelzer's requests for and use of FMLA leave and her firing, we conclude that a jury could find otherwise. As is the case with her interference theory, *cf. Burnett*, 472 F.3d at 482 (noting similarities of FMLA interference and retaliation analyses in case before it), then, summary judgment is not appropriate on her retaliation action, and we reverse its grant in the defendants' favor.

## III. CONCLUSION

The district court's grant of summary judgment is REVERSED.