In the

# United States Court of Appeals

## For the Seventh Circuit

No. 21-1885

TRACY ANDERSON,

*Plaintiff-Appellant,*

*v.*

NATIONS LENDING CORPORATION,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:19-cv-05016 — **Sharon Johnson Coleman**, *Judge.*

SUBMITTED NOVEMBER 12, 2021[*] — DECIDED MARCH 9, 2022

Before SYKES, *Chief Judge*, and RIPPLE and ST. EVE, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Tracy Anderson brought this action against her former employer, Nations Lending Corporation

[*] On November 8, 2021, we vacated the oral argument scheduled for November 12, 2021, after denying appellant's motion to reschedule and reviewing the parties' briefs. This appeal was therefore submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

("NLC"), for violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and for interference and retaliation associated with her rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* The district court granted NLC's motion for summary judgment on all claims. Ms. Anderson filed a timely notice of appeal and now asks us to review the district court's rulings on her FMLA claims. We agree with the district court that Ms. Anderson has not raised a genuine issue of material fact with respect to either of these claims. We therefore affirm the judgment of the district court.

## I

## BACKGROUND

### A.

On January 4, 2017, Ms. Anderson began working as a Pre-Fund Underwriting Auditor for NLC, a residential mortgage lender. In reviewing loan applications, she verified the underlying documentation from the underwriter and ensured that the loan met established requirements. These responsibilities included identifying any deficiencies in the loan files by analyzing credit and collateral, as well as by confirming income and tax calculations. Both Ms. Anderson and her direct supervisor, Christine Gourley, worked remotely. To ensure regulatory compliance, NLC randomly selects ten percent of loans audited by Underwriting Auditors for an internal post-funding audit.

During her first year of employment in 2017, Ms. Anderson exhibited performance deficiencies. Gourley suspected that she was moving through files too quickly and counseled her. Ms. Anderson never was written up or formally

disciplined, but she was provided ongoing training. During this time, she also experienced multiple health problems. Consequently, she exhausted all of her available sick days on an extended leave from October 6, 2017, to January 14, 2018.

When Ms. Anderson returned to work in January 2018, Gourley emailed her, having learned of additional performance issues, and asked her to explain these new errors. Ms. Anderson was unable to explain her mistakes, but she promised to be more diligent in the future. Gourley requested that she complete training before auditing more files. In February 2018, an NLC employee uncovered another of Ms. Anderson's errors, and Gourley created a spreadsheet to keep track of these performance issues. Again NLC requested an explanation of the error, but Ms. Anderson could not remember how she made the necessary calculations, and she no longer had her notes for that file.

In March of 2018, Ms. Anderson experienced more health issues, and Gourley told her to apply for FMLA leave. Ms. Anderson asserts Gourley also made comments about Ms. Anderson's being "sick a lot" and about needing "a full team there to run her department" during this time.[1] On March 19, Ms. Anderson began her FMLA leave and did not return to work until June 11, 2018.

Four days after Ms. Anderson started her FMLA leave, NLC's audit system flagged several more errors in Ms. Anderson's loans. Finally, on May 1, 2018, the Department of Housing and Urban Development ("HUD") notified NLC of two additional errors that Ms. Anderson had made on a loan

---

[1] R.85-1 at 201:12–15, 220:6–10.

that she audited a year prior. HUD cited NLC with the highest deficiency for these errors.

After learning of these errors in May 2018, Gourley recommended to Sam Asher, NLC's Manager of Human Services, that Ms. Anderson be terminated based on her poor performance. Gourley believed that Ms. Anderson's numerous errors constituted a violation of Section 3.01 of NLC's *Standards of Employee Conduct*.[2] Gourley further thought that Ms. Anderson's level of performance was inconsistent with her twenty years of experience. As a result of Gourley's recommendation, Asher began an investigation into Ms. Anderson's performance. During the investigation, Asher consulted with legal counsel and his reporting senior.

Prior to the completion of the investigation, Ms. Anderson returned to work on June 11, 2018. Following NLC's typical process for employees returning from leave, Gourley instructed her to go through her emails, sort through computer issues, catch up on training modules, and review any updated lending guidelines before she would be allowed to audit files again. NLC completed its investigation of Ms. Anderson's work performance on June 14, 2018. The following day, Gourley and Asher called her and terminated her employment. According to Ms. Anderson, no one counseled her on her errors, and no one referred to her performance during the phone call.

---

[2] Section 3.01 states the following: "Violations of these Standards of Conduct … will result in corrective action including a verbal warning, written warning or suspension, or termination of employment. … The Company may determine that certain offenses are serious enough to skip corrective action and warrant immediate termination, and reserves the right to skip or repeat corrective actions." R.79-1 at 217.

**B.**

Ms. Anderson sued NLC under the ADA and for interference and retaliation associated with her rights under the FMLA.[3] Her interference claim alleged that NLC's "stated reason for [her] termination was pretext for interference with [her] right to return to work to her same position" following her approved FMLA leave.[4] She asked for reinstatement, back pay, and other damages in compensation for the alleged interference with her right to return to work. Her retaliation claim alleged that Gourley "resented [her] lawful entitlement to FMLA leave[] and sought to punish [her] for availing herself of FMLA protections and to discourage [her] and others from using FMLA leave."[5] In her view, NLC terminated her employment to punish her for taking FMLA leave and to discourage future FMLA leave.

NLC filed a motion for summary judgment. On April 16, 2021, the district court granted NLC's motion for summary judgment as to all claims. With respect to her FMLA interference claim, although the parties had focused on whether Ms. Anderson was in fact reinstated upon return from her leave, the district court concluded that she had not established interference with her FMLA rights because she could not point to any evidence that she was entitled to reinstatement of her job upon her return from leave. The district court also concluded that NLC had presented ample evidence of a non-discriminatory rationale for Ms. Anderson's termination and

---

[3] Ms. Anderson has abandoned her ADA claim.

[4] R.1 at 6.

[5] *Id.* at 8.

that she had failed to provide any evidence that could refute NLC's proffered reason. Ms. Anderson timely appealed the district court's determination of her two FMLA claims.

## II

We review the district court's ruling on summary judgment de novo. *Carter v. Chi. State Univ.*, 778 F.3d 651, 657 (7th Cir. 2015). Summary judgment is proper only if, after viewing all facts in the light most favorable to the nonmoving party and after drawing all reasonable inferences in her favor, the pleadings, depositions, and affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) & (c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## A.

Ms. Anderson first contends that the district court erred by granting summary judgment on her FMLA interference claim. The principles that must guide our assessment of her claim are well established. The employee, here Ms. Anderson, has the burden of demonstrating that the alleged interference occurred. *See Darst v. Interstate Brands Corp.*, 512 F.3d 903, 908 (7th Cir. 2008). To prevail on an FMLA interference claim, she must establish that: "(1) she was eligible for the FMLA, (2) her employer was covered by the FMLA, (3) she was entitled to leave under the FMLA, (4) she provided notice of her intent to take leave, and (5) her employer denied her FMLA benefits to which she was entitled." *Lutes v. United Trailers, Inc.*, 950 F.3d 359, 363 (7th Cir. 2020) (cleaned up). Here, the parties contest the fifth element.

Under the FMLA, an employee on leave is entitled to restoration to the same or an equivalent position that she had

before she took qualifying leave. 29 U.S.C. § 2614(a)(1)(A)–(B). But "an employee is not entitled to return to her former position if she would have been fired regardless of whether she took the leave." *Goelzer v. Sheboygan Cnty.*, 604 F.3d 987, 993 (7th Cir. 2010). If NLC can present evidence that Ms. Anderson would have been terminated regardless of her leave, she can survive summary judgment only by raising a genuine issue of material fact that, despite that evidence, she was entitled to be reinstated. *See Simpson v. Off. of the Chief Judge of the Cir. Ct. of Will Cnty.*, 559 F.3d 706, 713 (7th Cir. 2009).

In its summary judgment motion, NLC maintained that the record demonstrated it had not interfered with her reinstatement because Ms. Anderson's leave was approved, and she returned to the same position after her leave. Ms. Anderson countered that NLC did not reinstate her to her former position because, upon her return, she was given no loan files to review, but instead was tasked with catching up on emails, reviewing directives issued during her absence, and watching training material.

In addressing Ms. Anderson's FMLA interference claim, the district court, relying on our decision in *Goelzer*, concluded that Ms. Anderson's characterization of her job upon return was of "no moment" because NLC had submitted evidence of her poor performance, and that evidence warranted, in any event, her discharge.[6] The district court noted that NLC's *Standards of Conduct* for employees permitted termination for substandard performance without first undertaking corrective action. The court went on to conclude that

---

[6] R.95 at 5.

Ms. Anderson had not submitted any evidence to contest that NLC's view of her performance was honestly believed.

Seeking reversal of the district court's decision, Ms. Anderson now contends that there is a genuine issue of triable fact as to whether the reason proffered by NLC was pretextual. She submits that there is a dispute as to whether her job performance was so poor as to justify her discharge. She also claims that there is a genuine dispute as to whether Gourley deviated from her usual pattern of counseling poorly performing employees before resorting to discharge. In Ms. Anderson's view, Gourley deviated from her usual approach because Ms. Anderson had taken FMLA leave.[7]

At the outset, we cannot accept Ms. Anderson's submission that NLC interfered with her FMLA rights by restoring her position as a Pre-Fund Underwriting Auditor but not assigning her any loans to review during her first days back on the job. First, no rational finder of fact could conclude that asking a returning employee to catch up on missed emails and to catch up on directives and training missed during her absence amounts to the sort of "make-work" that might indicate an intent to sideline or "warehouse" an employee permanently. Nor could such a fact-finder conclude that asking her

---

[7] Ms. Anderson also asserts that she was prejudiced because the district court granted summary judgment on a ground different from the ground asserted by NLC in its motion. She points out that NLC maintained that there was no interference with her reinstatement because she had returned from leave and been reinstated in her former position. An examination of the record makes clear that Ms. Anderson was well-oriented to the issue before the court: whether NLC was obligated to restore her to her job at the end of the FMLA leave. She was under no misapprehension and suffered no unfairness in this regard.

to catch up material she had missed deprived Ms. Anderson of the opportunity to participate fully in the responsibility, rewards, and satisfactions of the position for which she was hired. Moreover, NLC certainly had sufficient grounds not to assign Ms. Anderson to loan review tasks until it completed its investigation into what appeared to be her significant misfeasance in performing loan review duties.

The district court also correctly determined that, on this record, a rational jury could not conclude that Ms. Anderson was terminated because she had taken FMLA leave. An employee is not entitled to return to her prior position if she would have been terminated regardless of whether she took FMLA leave. *See Breneisen v. Motorola, Inc.*, 512 F.3d 972, 978 (7th Cir. 2008). Thus, "an employee may be fired for poor performance when she would have been fired for such performance even absent her leave." *Kohls v. Beverly Enters. Wis., Inc.*, 259 F.3d 799, 805 (7th Cir. 2001); *see also Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 636 (7th Cir. 2009) (affirming summary judgment for employer where the employer "set forth substantial evidence that [the employee] was not entitled to resume his employment upon his return from leave because the company had, after an investigation, determined that he had not performed his duties in a competent manner prior to the commencement of his leave" and the employee failed to counter that evidence).

Here, Ms. Anderson has not presented sufficient evidence to conclude that her discharge was pretextual. Indeed, she never disputes NLC's estimation of the quality of her work. Gourley testified that she was concerned about the errors Ms. Anderson was making prior to her FMLA leave. An internal audit during Ms. Anderson's leave period then

uncovered more errors on her part. Gourley testified, moreover, that the kind of errors Ms. Anderson made would not be expected from someone with her experience—more than twenty years in the industry. Ms. Anderson does not contest the errors discovered by NLC, nor can she point to any evidence to suggest that her files were improperly audited. In her deposition, Ms. Anderson was unable to provide any evidence that NLC exaggerated the severity of minor errors or falsified her alleged errors as a pretext for her termination. She also does not attempt to establish that there was any impropriety or shortcoming in NLC's investigation.

Ms. Anderson points out that Gourley testified that she would have counseled Ms. Anderson about the loan deficiencies discovered during her leave if Ms. Anderson had been available at the time. The failure to render this advice upon Ms. Anderson's return establishes, in Ms. Anderson's view, FMLA interference. Gourley's testimony cannot bear the weight that Ms. Anderson asks it to support. As NLC points out, read in context, there is no indication in Gourley's testimony that she intended her counseling about individual errors to preclude a later termination based on Ms. Anderson's entire record. Read in context, Gourley simply states that she would not have let any of these errors slide but would have brought them to Ms. Anderson's attention to prevent any further mishaps for however long Ms. Anderson stayed with NLC.

More fundamentally, the evidence clearly establishes that NLC's *Standards of Employee Conduct* specifically state that the company reserves the right to terminate employment without engaging in corrective counseling whenever the seriousness of the situation requires. Notably, the *Standards* further

provide that counseling need not be repeated. There is no indication that Gourley believed that the situation warranted additional counseling on her part.

Finally, NLC based its decision to terminate Ms. Anderson's employment on the results of the investigation conducted under the aegis of the Human Resources department. Although Gourley clearly initiated the process, Ms. Anderson points to no evidence to suggest that HR acted as the "cat's paw" or "rubber stamp" for Gourley in the conduct of the investigation.

The district court correctly determined that Ms. Anderson has failed to raise a genuine issue of fact that her termination constituted an interference with her FMLA leave. Ms. Anderson did not provide evidence that would permit a reasonable trier of fact to conclude that her work performance deficiencies did not take place or that NLC's investigation into the deficiencies was not a bona fide attempt to assess the appropriate action for NLC to take.

## B.

Ms. Anderson next contends that summary judgment on her retaliation claim was improper. In her view, the record establishes that her FMLA leave was a substantial or motivating factor in NLC's termination decision and that the timing of her termination is suspicious. She submits that, if her discharge were based on poor work performance, NLC could have terminated her when the random audit triggered a review of some of her loans before she applied for FMLA leave. Instead, she continues, NLC fired her for alleged poor work performance only after she applied for FMLA leave. Finally, Ms. Anderson points to her last week at NLC and NLC's

failure to provide her with any work as proof of her experiencing a materially adverse action. Ms. Anderson also claims that Gourley was not supportive of her leave and made comments about her being "sick a lot" and needing a "full team" to run her department.[8]

"The FMLA provides that it is unlawful for an employer 'to discharge or in any manner discriminate against' any employee for opposing any practice the FMLA makes unlawful." *Goelzer*, 604 F.3d at 995 (quoting 29 U.S.C. § 2615(a)(2)). "Retaliation claims under the FMLA … require three familiar elements: (1) the employee engaged in statutorily protected activity; (2) the employer took adverse action against the employee; and (3) the protected activity caused the adverse action." *Freelain v. Vill. of Oak Park*, 888 F.3d 895, 901 (7th Cir. 2018). To succeed on her retaliation claim, Ms. Anderson does not need to prove that "retaliation was the *only* reason for her

---

[8] R.85-1 at 201:12–15, 220:6–10. In her reply brief, Ms. Anderson also contests that NLC treated another, potentially similarly situated, employee, Mary Cacciotti, more favorably because Cacciotti did not take FMLA leave and was counseled about her mistakes. Ms. Anderson, while mentioning Cacciotti in her opening brief's statement of facts, failed to present a developed argument in that brief. Her failure to present such an argument normally would constitute a waiver. *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021) (explaining that skeletal arguments in the opening brief and arguments raised for the first time in the reply brief are waived). However, NLC failed to invoke waiver in its brief. Under these circumstances, NLC has waived Ms. Anderson's waiver. Ms. Anderson's argument nevertheless fails. Ms. Anderson has not shown that Cacciotti is "directly comparable to her in all material respects," including "education, experience, and qualifications." *See Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 751 (7th Cir. 2006) (quoting *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002)). There is no evidence that Cacciotti's level of experience was comparable to Ms. Anderson's twenty years of experience in the industry.

termination; she may establish an FMLA retaliation claim by 'showing that the protected conduct was a substantial or motivating factor in the employer's decision.'" *Lewis v. Sch. Dist. #70*, 523 F.3d 730, 741–42 (7th Cir. 2008) (quoting *Culver v. Gorman & Co.*, 416 F.3d 540, 545 (7th Cir. 2005)). Ms. Anderson was engaging in statutorily protected activity by utilizing FMLA leave and experienced an adverse action when she was terminated from her position. "Therefore, we need only determine whether the record established by [Ms. Anderson] supports the inference that [she] established a causal connection between the two events." *See Cracco*, 559 F.3d at 633.

The evidence presented by Ms. Anderson fails to establish this causal connection. Ms. Anderson invites our attention to a comment by Gourley, the timing of the audit on her work performance (while she was on FMLA leave), and the fact that she never was disciplined for poor work performance at an earlier date as evidence of retaliatory intent.

We previously have rejected a similar argument under similar circumstances. The plaintiff in *Cracco* also was terminated upon returning from FMLA leave, and, similarly, his employer had discovered errors in his work performance while he was on leave. We concluded that "[i]f the FMLA allows an employer to base adverse employment actions on performance problems discovered while the employee is on leave, the fact that the employer discharges the employee when he returns from leave cannot be sufficient evidence to establish causation." *Id.* at 634. Thus, "[s]ummary judgment for the employer is proper where the employer provides undisputed evidence that the adverse employment action is based upon the employee's poor job performance," even if the employee is fired after FMLA leave. *Curtis v. Costco Wholesale*

*Corp.*, 807 F.3d 215, 221 (7th Cir. 2015); *see also Long v. Teachers' Ret. Sys. of Ill.*, 585 F.3d 344, 354 (7th Cir. 2009) ("[A] decline in performance before the employee engages in protected activity does not allow for an inference of retaliation.").

Furthermore, Ms. Anderson's invocation of *Goelzer* lacks merit. In *Goelzer*, the plaintiff had received positive performance reviews, and the termination decision was communicated after her supervisor found out she planned to take FMLA leave. 604 F.3d at 996. The plaintiff's supervisor also "explicitly contrasted" the employee's excellent attendance with her use of FMLA and refused to award a higher merit increase because the plaintiff missed too much work. *Id.* at 994. The facts of *Cracco*, like the facts here, do not allow for an inference that the FMLA leave was a motivating factor in the employee's termination; the facts of *Goelzer* do.

Here, Ms. Anderson was terminated after her work performance deficiencies came to light while she happened to be on leave. Notably, however, Gourley began tracking Ms. Anderson's mistakes in February 2018, *before* she requested FMLA leave in March. Shortly after her leave began, NLC learned of several additional mistakes Ms. Anderson had made. Moreover, Asher reviewed Ms. Anderson's performance deficiencies, and there is no evidence of any animus on his part. His role was to assess Gourley's allegations and to determine whether Ms. Anderson's discharge was compatible with NLC policy.

Ms. Anderson also contends that it is suspicious that she was not fired immediately when the audit triggered a review of her loans. The fact that NLC and Gourley waited to terminate Ms. Anderson until the investigation was complete only supports a finding that there was no discriminatory FMLA

retaliation. Waiting to confirm the results of the investigation supports a finding that NLC terminated Ms. Anderson based on performance; it is not suspicious that Ms. Anderson was not terminated earlier.

Ms. Anderson also attempts to create a genuine issue of triable fact by pointing to a comment by Gourley. Ms. Anderson testified that Gourley had commented to her that she was "sick a lot" and that Gourley needed a full team to achieve the department's goals. When assessed in the context of this record, this remark is insufficient to survive summary judgment. *Cf. id.* at 994–96 (reversing summary judgment where employer repeatedly lamented the employee's leave and explicitly denied the employee merit increases because the employee missed too much time). The record makes clear that, in NLC's decision-making process, Gourley was not the final decision-maker. Indeed, the entire purpose of the HR investigation was to ensure that discharge on the ground of poor work performance was justified. The deposition of Asher and the rest of the record make clear that the investigators, Asher and his reporting senior,[9] regarded Gourley more as a complainant than a final decision-maker. Although Gourley had authority to initiate the proposal that Ms. Anderson's employment be terminated, her authority to discharge was subject to the approval of others who were tasked with assessing whether her recommendation was compatible with company policy. There is no indication in the record, and indeed Ms. Anderson does not argue, that Asher and his reporting

---

[9] *See* R.85-2 at 41:11–25 (Asher testifying that, after reviewing the information available to him, he escalated the issue to his supervisor for further consultation); R.79-1 at 203 (Asher emailing Gourley's complaints of Ms. Anderson's work deficiencies for legal counsel review).

senior did not understand their role or in any way abnegated their responsibility to arrive at an independent decision.

## CONCLUSION

Ms. Anderson was unable to establish that she had a right to reinstatement despite the numerous work performance deficiencies discovered while she was on FMLA. She was also unable to demonstrate that NLC terminated her due to her taking FMLA leave rather than due to the deficiencies it discovered while she was out. We therefore affirm the district court's determination that Ms. Anderson cannot establish an FMLA interference claim or an FMLA retaliation claim.

AFFIRMED