In the

# United States Court of Appeals
## For the Seventh Circuit

No. 25-1933

ELIZABETH CHITWOOD,

*Plaintiff-Appellant*,

*v.*

ASCENSION HEALTH ALLIANCE, doing business as ASCENSION,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:23-cv-00563-RLY-CSW — **Richard L. Young**, *Judge*.

ARGUED DECEMBER 16, 2025 — DECIDED MARCH 3, 2026

Before BRENNAN, *Chief Judge*, and SYKES and TAIBLESON, *Circuit Judges*.

TAIBLESON, *Circuit Judge*. Elizabeth Chitwood worked as a human resources specialist at Ascension. In 2021, Chitwood was approved to take intermittent leave under the Family and Medical Leave Act ("FMLA" or "the Act"), 29 U.S.C. §§ 2601 *et seq.*, for her serious health condition. Later that year, she was also approved to take continuous FMLA leave for a two-month period to care for her son. When Chitwood's

continuous FMLA leave ended, Ascension instructed Chitwood to return to work. But Chitwood did not return, and Ascension fired her. The next day, Chitwood attempted to retroactively report intermittent FMLA leave for her absences after her continuous leave ended—to no avail. Chitwood then sued Ascension, claiming that Ascension had interfered with her FMLA rights and retaliated against her for using FMLA leave. The district court granted summary judgment to Ascension, and Chitwood appeals.

We affirm the district court's judgment. To prevail, Chitwood needed to present evidence that would permit a reasonable jury to find that Ascension denied her FMLA leave to which she was entitled, or that Ascension terminated her for legitimate use of FMLA leave. Chitwood failed on both grounds.

## I. Background

Chitwood began working for Ascension as a human resources specialist in March of 2019. In July of 2021, Chitwood was granted intermittent FMLA leave for her migraines. She was required to report her intermittent FMLA leave usage to Ascension's third-party leave administrator, Sedgwick Claims Management Services, Inc., on "the same day the absence occurs." Chitwood was also required to notify her supervisor of "any time taken under the FMLA … as soon as practicable." Chitwood used her intermittent FMLA leave at least eight times during the summer of 2021.

In late August of that year, Chitwood stopped reporting to work entirely. She requested continuous military leave under the FMLA from August through December of 2021 based on her ex-husband's military orders. Sedgwick denied that

request as unauthorized by the FMLA, but Chitwood did not return to work. Instead, in October of 2021, Chitwood applied for retroactive continuous FMLA leave to care for her son, who had a serious health condition. Sedgwick approved that request for August 31 through November 3, 2021.

When Chitwood's continuous FMLA leave expired in November, however, she did not return to work. Ascension employee Scott Godsey contacted Chitwood about the conclusion of her leave. Godsey instructed Chitwood at least three times to return to work on November 15. Godsey also told Chitwood that if she did not return to work as instructed, Ascension would fire her. Chitwood applied for a personal leave of absence for November 4 through December 1, 2021, but that request was denied.

November 15 came, and still Chitwood did not return to work. Instead, she left a voicemail on Ascension's attendance absentee line that morning, stating that she had been unable to log into her computer and assumed she had been terminated. Chitwood said that "it was a pleasure to work with you all," thanked Ascension "for the opportunity," and expressed her intent to return company property.

Ascension terminated Chitwood's employment later that day, citing the reason as "Leave Exhaust/Failure to Return to Work." On November 16, the day after she was terminated, Chitwood attempted to report intermittent FMLA leave to Sedgwick for her absences on November 11, 12, and 15. Sedgwick notified Ascension of Chitwood's requests, but Ascension considered them invalid since Chitwood had been terminated the previous day.

Chitwood then sued Ascension, alleging that her termination amounted to interference with and retaliation for her exercise of FMLA rights. The district judge granted summary judgment to Ascension, holding that no reasonable jury could decide in Chitwood's favor. The district judge determined that Chitwood had been terminated and was no longer entitled to FMLA leave at the time she attempted to retroactively report her November absences. The judge also found that she had not reported those absences as soon as "practicable," as required by FMLA regulations and Ascension's policy. This appeal followed.[1]

## II. Discussion

We review the district judge's ruling on a motion for summary judgment *de novo*, construing all facts and making all reasonable inferences in the light most favorable to the non-moving party. *Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 824 (7th Cir. 2012). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The FMLA grants eligible employees the right to take up to "a total of 12 workweeks of leave during any 12-month period" for certain qualifying reasons, including the employee's own "serious health condition that makes the employee unable to perform the functions of" their job or to care for a child

---

[1] Chitwood also sued Ascension for Title VII retaliation, claiming that Ascension terminated her in retaliation for seeking a religious exemption from Ascension's COVID-19 vaccine mandate. The district judge granted summary judgment to Ascension on that claim, and Chitwood does not challenge that decision on appeal.

with a "serious health condition." 29 U.S.C. § 2612(a)(l). An employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA. *Id.* § 2615(a)(l). Nor may an employer "discharge or in any other manner discriminate" against an employee for exercising their FMLA rights. *Id.* § 2615(a)(2); *see, e.g., Kauffman v. Fed. Express Corp.*, 426 F.3d 880, 884 (7th Cir. 2005) ("We have construed [§ 2615(a)(2) and (b)] to create a cause of action for retaliation."). FMLA claims thus "generally come in two forms: interference and retaliation." *Juday v. FCA US LLC*, 57 F.4th 591, 595 (7th Cir. 2023). Both are at issue here.

### A. FMLA Interference

To succeed on her FMLA interference claim, Chitwood must show that (1) she was eligible for FMLA protection, (2) Ascension was covered by the FMLA, (3) she was entitled to take leave under the FMLA, (4) she provided sufficient notice of her intent to take FMLA leave, and (5) Ascension denied her FMLA benefits to which she was entitled. *Davis v. Ill. Dep't of Hum. Servs.*, 137 F.4th 641, 648 (7th Cir. 2025).

Chitwood can make almost none of these showings. Her suit focuses on her unsuccessful effort to report intermittent FMLA leave for her absences on November 11, 12, and 15, 2021. But at the time Chitwood attempted to retroactively report those absences, she was no longer employed by Ascension. She therefore was not denied FMLA benefits to which she was entitled. *See, e.g., Riley v. City of Kokomo*, 909 F.3d 182, 188 (7th Cir. 2018) (affirming summary judgment for employer where "undisputed facts show that [employer] had already decided to terminate [employee] … *before* [employee] requested leave"); *Guzman v. Brown County*, 884 F.3d 633, 640 (7th Cir. 2018) (affirming summary judgment on FMLA

interference claim because plaintiff was not "denied FMLA benefits to which she was entitled" when her supervisor decided to terminate her before her supervisor had any knowledge that she requested FMLA leave).

Chitwood contends that she was entitled to retroactively report her November 11, 12, and 15 absences as FMLA leave on November 16. Even setting aside her November 15 termination, that claim fails on both the law and the facts. FMLA regulations require employees to give notice of leave "as soon as practicable under the facts and circumstances of the particular case," and generally "within the time prescribed by the employer's usual and customary notice requirements." 29 C.F.R. § 825.303(a). Ascension policy, in turn, required Chitwood to report her intermittent FMLA leave usage to Sedgwick on "the same day the absence occurs," and to notify her supervisor of her absence "as soon as practicable." Failure to "follow the applicable regulatory and workplace requirements" for notice can foreclose an FMLA interference claim. *Righi v. SMC Corp.*, 632 F.3d 404, 412 (7th Cir. 2011); *see also, e.g.*, *Lutes v. United Trailers, Inc.*, 950 F.3d 359, 365 (7th Cir. 2020).

No reasonable jury could find the notice requirements satisfied here. It is undisputed that on November 15, Chitwood called Ascension's attendance line and left a voicemail, assuming she had been terminated and expressing gratitude for the opportunity to work at Ascension. At no point in her voicemail did Chitwood express any intention to take intermittent FMLA leave for that day. Instead, Chitwood waited until the next day, after she had been terminated, to retroactively report intermittent FMLA absences for November 11, 12, and 15. Nothing in the record suggests that Chitwood was

unable to report these absences on "the same day" they occurred, as required by Ascension's policy. To the contrary, the record is clear that it was "practicable" for Chitwood to report her absences on at least November 15, as evidenced by the fact that she was able to call Ascension's attendance line that very morning. *See* 29 C.F.R. § 825.303(a).

Chitwood asks us to excuse her belated reporting because, in her telling, she had previously been permitted to report intermittent FMLA absences as much as 24 hours after their occurrence. But Sedgwick's records show just a single instance of Chitwood reporting an intermittent FMLA absence one day late. And on that instance, Chitwood had texted her supervisor on the day of her absence about her migraine and intent to take intermittent FMLA leave. The record therefore does not support Chitwood's claim about Ascension's accepted practice. The district judge properly granted summary judgment on Chitwood's FMLA interference claim.

### B. FMLA Retaliation

To prevail on an FMLA retaliation claim, Chitwood must show that (1) she engaged in statutorily protected activity, (2) Ascension took adverse action against her, and (3) the protected activity caused the adverse action. *Freelain v. Vill. of Oak Park*, 888 F.3d 895, 901 (7th Cir. 2018). This "claim requires proof of discriminatory intent—evidence that the employer 'was acting under a prohibited animus.'" *Juday*, 57 F.4th at 596 (citation omitted).[2]

---

[2] Our cases have not been fully consistent about the causation standard for an FMLA retaliation claim. *Compare Lohmeier v. Gottlieb Mem'l Hosp.*, 147 F.4th 817, 830 (7th Cir. 2025) ("To make out an FMLA retaliation claim, Lohmeier must show that her FMLA request was the 'but-for' cause

Chitwood claims that Ascension retaliated against her for using FMLA leave. That contention is a non-starter as to her November 11, 12, and 15 absences, because Chitwood was terminated before even attempting to invoke FMLA for those days. *See, e.g., Guzman*, 884 F.3d at 639–40. In the months before that, though, Chitwood did extensively use both intermittent and continuous FMLA leave. But the record is clear that it was Chitwood's failure to return to work as directed—not her prior use of FMLA leave—that was the cause of her termination. After her continuous FMLA leave expired, Chitwood was informed multiple times that she must return to work on November 15, 2021, or else she would be terminated. When Chitwood failed to return to work as instructed, she was terminated—just as Ascension had warned. There is no evidence that, had Chitwood simply reported to work as directed, she *still* would have been terminated in retaliation for her legitimate FMLA use.

Chitwood attempts to gin up pretext on Ascension's behalf by pointing to email threads and messages between Ascension employees that discuss prior concerns about her attendance and FMLA use. But these conversations, even when

_____

of her termination."), *with, e.g., Trahanas v. Nw. Univ.*, 64 F.4th 842, 856 (7th Cir. 2023) ("To succeed in showing causation, a plaintiff must demonstrate that 'the protected conduct was a substantial or motivating factor in the employer's decision.'" (citation omitted)). The distinction between "but-for causation" and "substantial or motivating factor" makes no difference in this case, and neither the parties nor the district judge focused on this issue. But we flag the question here because it may be a substantial one, implicating statutory and regulatory construction as well as Supreme Court precedent. *See Malin v. Hospira, Inc.*, 762 F.3d 552, 562 n.3 (7th Cir. 2014); *see also, e.g., Lapham v. Walgreen Co.*, 88 F.4th 879, 890–94 (11th Cir. 2023); *cf. Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013).

construed in the light most favorable to Chitwood, do not establish pretext or retaliation.

Chitwood first points to an internal email chain between Godsey and another Ascension employee prior to her termination. While discussing Chitwood's return to work, the Ascension employee stated: "I agree we have to wait until Sedgewick [sic] approves or denies. If they deny, we will move to term if she does not RTW [return to work]. I am not sure what the end game is here but it is not on the up and up." Godsey responded: "It sounds like [Chitwood] is using FMLA for herself, her son and her daughter. Perhaps she is trying to make at least one of them stick for the continuous leave."

At most, this email thread establishes that Ascension employees had an "honest suspicion that [Chitwood] was abusing [her] FMLA leave." *Juday*, 57 F.4th at 596. That is unsurprising given Chitwood's attempts to obtain FMLA leave on multiple grounds, at least one of which was unauthorized by law. The Act does not insulate employees from discipline for abusing their FMLA rights, *see Paterakos v. City of Chicago*, 147 F.4th 787, 800 (7th Cir. 2025); *Juday*, 57 F.4th at 595–96, and here, Chitwood has not established that her coworkers harbored anything other than an "honest suspicion" about her FMLA requests. *Paterakos*, 147 F.4th at 800 (affirming summary judgment for employer where supervisors "honestly believed [employee] was abusing her FMLA leave," even "if the employer was in fact mistaken in that belief"); *Juday*, 57 F.4th at 596. That is not enough to establish retaliation.

Chitwood's reliance on a second set of messages between Ascension employees fares no better. After Ascension decided to terminate Chitwood, Godsey told Chitwood's supervisor, Jeanine Guzik, that the termination reason should be

"Exhausted LOA/Failure to Ret." Godsey also advised Guzik about designating Chitwood's rehire status, stating: "I would be careful not to make anyone failing to return from leave as not eligible. Perhaps you should put that she was not effectively completing her job duties and was unreliable." But in response, Guzik clarified to Godsey that Chitwood did not have productivity issues; instead, she had attendance issues.[3] Guzik thus did not follow Godsey's recommendation, and Chitwood's termination notice listed "Leave Exhaust/Failure to Return to Work" as the basis.

An after-the-fact attempt to concoct nonretaliatory reasons for an adverse employment action may give rise to an inference of pretext. *See, e.g., Goelzer v. Sheboygan County*, 604 F.3d 987, 996 (7th Cir. 2010). But pretext requires a "lie, specifically a phony reason for some action." *Tibbs v. Admin. Off. of the Ill. Cts.*, 860 F.3d 502, 506 (7th Cir. 2017) (citation omitted). That is not what happened here. While Godsey proposed potential rationales for designating Chitwood as ineligible for rehire, those rationales were not adopted as reasons for termination. Instead, Ascension remained steadfast in its basis for terminating Chitwood: her failure to return to work. Nothing about Godsey's statements indicates that Ascension's proffered reason was "factually baseless" or "not the actual motivation for" Chitwood's termination. *Tibbs*, 860 F.3d at 506. And terminating an employee for failing to return to work after FMLA leave is exhausted is not retaliatory.

---

[3] The record supports Guzik's concern about Chitwood's attendance issues: In addition to her failure to return to work as directed, Chitwood had previously received corrective action concerning her exhaustion of paid time off and "unapproved schedule changes."

As is often the case, the simple story is the one borne out by the evidence here: Ascension terminated Chitwood for her unexcused absence from work. The district judge thus properly granted summary judgment for Ascension on the FMLA retaliation claim as well.

AFFIRMED