25CA0037 Ozborn v Colorado Supreme Court 05-07-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0037
City and County of Denver District Court No. 24CV31821
Honorable J. Eric Elliff, Judge

Michael Ozborn,

Plaintiff-Appellant,

v.

Colorado Supreme Court Office of Attorney Regulation Counsel,

Defendant-Appellee.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE BROWN
Freyre and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 7, 2026

Kontnik | Cohen, LLC, Spencer J. Kontnik, Matthew L. Fenicle, Denver,
Colorado, for Plaintiff-Appellant

Philip J. Weiser, Attorney General, Lily E. Nierenberg, Senior Assistant
Attorney General, Kyle M. Holter, Assistant Attorney General, Denver,
Colorado, for Defendant-Appellee

¶ 1    Plaintiff, Michael Ozborn, appeals the district court's order dismissing his amended complaint against defendant, the Colorado Supreme Court Office of Attorney Regulation Counsel (OARC). We affirm in part and reverse in part and remand the case for further proceedings.

## I.    Background

¶ 2    In 2021, Ozborn began attending the University of Denver Sturm College of Law (DU).[1] Between 2023 and 2024, Ozborn was diagnosed with generalized anxiety disorder, post-traumatic stress disorder, nightmare disorder, and major depressive disorder. He had also been diagnosed previously with attention deficit hyperactivity disorder. Based on these diagnoses, DU gave Ozborn fifty percent extra time and a quiet testing space on all exams.

¶ 3    Ozborn graduated from DU and applied to take the July 2024 Uniform Bar Exam (bar exam). On May 1, 2024, Ozborn submitted a request to OARC to provide him the following accommodations:

---

[1] Because the district court dismissed Ozborn's complaint based on a motion to dismiss, we take these factual allegations from the amended complaint and assume they are true. *See Roane v. Elizabeth Sch. Dist.*, 2024 COA 59, ¶ 44. We also view the allegations in a light most favorable to Ozborn. *Bewley v. Semler*, 2018 CO 79, ¶ 14.

fifty percent extra time, fifteen-minute breaks every ninety minutes, and a distraction-free testing environment.[2] With his initial accommodation request, Ozborn submitted confirmation of the accommodations he received while at DU and a treating psychiatrist's report. On May 21, OARC denied Ozborn's request for accommodations.

¶ 4 On May 28, Ozborn timely appealed. He submitted copies of his undergraduate and law school transcripts and indicated that he and his treating psychiatrist were available to answer questions. On June 3 or 4, after the appeal deadline, Ozborn supplemented his appeal by identifying three people OARC could contact to discuss his diagnoses and provided a letter from DU's Office of Student Disability Services listing the accommodations it had provided to him. On June 13, OARC issued a final decision denying Ozborn's request for accommodations.

¶ 5 On June 14, Ozborn filed a complaint in the district court asserting a claim that OARC had discriminated against him by

---

[2] Ozborn also asked to bring his inhaler and some Aquaphor into the exam. OARC granted those requests, and they are not at issue in this appeal.

denying his accommodations request in violation of the Colorado Anti-Discrimination Act (CADA), § 24-34-601, C.R.S. 2023;[3] § 24-34-801, C.R.S. 2025. Three days later, Ozborn filed a motion for preliminary injunction under C.R.C.P. 65, seeking an order requiring OARC to provide him with the requested accommodations.

¶ 6 On June 26, OARC issued an "updated determination" granting Ozborn accommodations for the July 2024 bar exam. OARC indicated that, "following the receipt of additional information concerning [Ozborn's] request after the closure of [his] appeal deadline," it had "contacted an official at the DU Sturm College of Law and solicited the information and certification required to consider [Ozborn's] requested accommodations fully." OARC authorized the following accommodations: (1) "[fifty percent] extra test time on all test sessions"; (2) "15 minutes of off-the-clock breaks for every 1 hour of testing (60 minutes per test session)"; and (3) "[a] reduced distraction testing environment."

---

[3] Section 24-34-601, C.R.S. 2023, was in effect at the time of the events at issue, and we refer to that version throughout this opinion. The statute has since been amended.

¶ 7 In September, Ozborn filed an amended complaint that acknowledged OARC's June 26 decision. Among other things, Ozborn alleged that OARC's June 13 denial "triggered a series of events which put [him] through an emotional rollercoaster and derailed [his] efforts to focus and study for the bar examination for many weeks and months." He alleged that the June 26 letter caused him "anger, frustration, and anxiety" and that he "felt unprepared to sit for the July 2024 bar examination because of the events." He also alleged that he declined to take the July 2024 bar exam because of OARC's discrimination but that he intended to take the February 2025 bar exam. And he alleged that OARC had retaliated against him after he filed his initial complaint by using its character and fitness department to attempt to contact the references he provided with the late supplement to his appeal.

¶ 8 Ozborn asserted three claims for relief: OARC (1) discriminated against him by denying his request for accommodations on the July 2024 bar exam; (2) retaliated against him; and (3) would continue to discriminate against him in connection with the February 2025 bar exam and future bar exams.

¶ 9     For each claim, Ozborn alleged that he was entitled to a $3,500 statutory penalty under sections 24-34-602 and 24-34-802(2)(a)(III), C.R.S. 2023,[4] nominal damages, and reasonable attorney fees and costs. Relative to claim three, Ozborn also sought an injunction requiring OARC to accommodate him on the February 2025 bar exam and any future exams and to internally audit, review, and revise its policies and practices.

¶ 10    OARC moved to dismiss the amended complaint under C.R.C.P. 12(b)(1) and C.R.C.P. 12(b)(5). Neither party requested a hearing on the jurisdictional challenge, and the district court did not conduct one. In a written order, the court granted the motion, dismissed claims one and three for lack of standing, and dismissed claim two for failure to state a claim.

## II.  Claim One

¶ 11    Ozborn contends that the district court erred by concluding it did not have subject matter jurisdiction over claim one because he lacked standing. We agree Ozborn has standing to bring claim one. We also reject OARC's argument that, even if Ozborn has standing,

---

[4] Both statutes have been amended since the events at issue in this appeal. We cite these applicable versions throughout this opinion.

5

we can affirm on the alternative bases that claim one is moot or fails to state a claim.  We reverse the district court's dismissal of claim one and remand it for further proceedings.

### A.      Subject Matter Jurisdiction

#### 1.      Standard of Review and Generally Applicable Law

¶ 12      Under C.R.C.P. 12(b)(1), the plaintiff has the burden of proving the facts necessary to establish jurisdiction, and evidence outside the pleadings may be considered to resolve a jurisdictional challenge.  *City of Aspen v. Kinder Morgan, Inc.*, 143 P.3d 1076, 1078 (Colo. App. 2006).  But when, as here, the jurisdictional facts are undisputed, the trial court may decide the issue of jurisdiction as a matter of law, *Jefferson County v. Dozier*, 2025 CO 36, ¶ 11, and we review the court's ruling de novo, *City & County of Denver v. Crandall*, 161 P.3d 627, 633 (Colo. 2007).

¶ 13      Standing and mootness are threshold jurisdictional issues that must be addressed before a case can proceed on the merits. *See Ainscough v. Owens*, 90 P.3d 851, 855 (Colo. 2004) (explaining standing is a threshold issue); *USAA v. Parker*, 200 P.3d 350, 356 (Colo. 2009) (noting mootness is "a threshold jurisdictional matter").

A trial court cannot decide a case over which it lacks subject matter jurisdiction. *Long v. Cordain*, 2014 COA 177, ¶ 10.

¶ 14 "In Colorado, parties to lawsuits benefit from a relatively broad definition of standing." *Ainscough*, 90 P.3d at 855. To establish standing, a plaintiff must demonstrate (1) an injury in fact (2) to a legally protected interest. *Id.* To satisfy the injury-in-fact requirement, a plaintiff must show that the defendant's action caused or threatened to cause an injury. *San Juan Hut Sys., Inc. v. Bd. of Cnty. Comm'rs*, 2023 COA 10, ¶ 13. The legally-protected-interest requirement asks whether the plaintiff's claim for relief is grounded in the common law, the constitution, a statute, a rule, or a regulation. *Hickenlooper v. Freedom from Religion Found., Inc.*, 2014 CO 77, ¶ 10. Whether a plaintiff has standing is a question of law that we review de novo. *Ainscough*, 90 P.3d at 856.

¶ 15 A case becomes moot when the relief sought, if granted, would have no practical legal effect on the controversy. *Colo. Mining Ass'n v. Urbina*, 2013 COA 155, ¶ 22. Subject to limited exceptions, a court will not exercise jurisdiction over a controversy that is moot. *See Educ. reEnvisioned BOCES v. Colo. Springs Sch. Dist. 11*, 2024

CO 29, ¶¶ 26-27. We review de novo whether an issue is moot. *See People ex rel. Rein v. Meagher*, 2020 CO 56, ¶ 14.

2. The District Court Has Subject Matter Jurisdiction

¶ 16 Under CADA,

> It is a discriminatory practice and unlawful for a person, directly or indirectly, to refuse, withhold from, or deny to an individual or a group, because of [a] disability . . . the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation . . . .

§ 24-34-601(2)(a).

¶ 17 In claim one, Ozborn alleged that OARC discriminated against him relative to the July 2024 bar exam in violation of section 24-34-601(2)(a) by (1) failing to engage in the interactive process; (2) denying his request for reasonable accommodations on the July 2024 bar exam; and (3) denying his appeal and stating it would administer his examination under standard testing conditions.

¶ 18 The district court noted that Ozborn filed his complaint upon the denial of his request for accommodations, which "denial constituted an injury in fact to a legally protected interest." As we understand it, the court concluded that Ozborn had standing when

he commenced the underlying action against OARC. But the court reasoned that Ozborn "was afforded the accommodations that he was entitled to," so he could not establish an injury in fact at the time he filed his amended complaint and thus lacked standing. Essentially, the court concluded that Ozborn had lost standing by the time he filed his amended complaint. Ozborn contends this was error, and we agree.

¶ 19 Standing is determined at the time the action is filed. *San Juan Hut Sys., Inc.*, ¶ 16. When Ozborn filed the original complaint, he alleged that he was entitled to accommodations and had been denied those accommodations in violation of CADA. *See Roane v. Elizabeth Sch. Dist.*, 2024 COA 59, ¶ 44 (to determine if there is an injury in fact, we accept the allegations in the complaint as true). Thus, Ozborn alleged an injury in fact to a legally protected interest and had standing at the time the action was commenced. *See id.*

¶ 20 That Ozborn filed an amended complaint that became the operative complaint governing his causes of action does not mean we reassess standing as of the date of the later complaint. None of the controlling cases OARC cites stands for that principle. *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473-74 (2007) (in

the context of deciding whether a person bringing an action is an "original source" as required for jurisdiction under the False Claims Act, the Court acknowledged "[t]he rule that subject-matter jurisdiction 'depends on the state of things at the time of the action brought'" but noted that jurisdictional allegations that are later proved false or withdrawn in an amended complaint may defeat jurisdiction (citation omitted)); *In re Marriage of Lockwood*, 857 P.2d 557, 561 (Colo. App. 1993) (stating the unremarkable proposition that "[a]n amended complaint supersedes the original complaint and becomes the sole statement of the plaintiff's cause of action"); *cf. G&E Real Est., Inc. v. Avison Young–Washington D.C., LLC*, 168 F. Supp. 3d 147, 159-60 (D.D.C. 2016) (assessing standing at the time of an amended complaint to allow plaintiff to cure a lack of standing at the time of the original complaint where claims had been assigned to plaintiff after the original complaint); *Espinoza v. Perez*, 165 P.3d 770, 773 (Colo. App. 2006) ("A plaintiff's lack of standing may be cured by an assignment of the claim.").

¶ 21     Moreover, that OARC later granted Ozborn's request for accommodations does not mean he suffered no injury — rather, that fact implicates mootness as discussed below. *See Friends of*

*the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) ("The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." (citation omitted)).  Thus, we conclude that the district court erred by dismissing claim one for lack of standing.

¶ 22    Nonetheless, OARC contends that we can affirm the district court's dismissal on the alternative ground that claim one became moot once OARC granted Ozborn's request for accommodations and he declined to take the July 2024 bar exam.  We are not persuaded.

¶ 23    When analyzing whether a claim is moot, "we do not ask whether the relief sought *should* be granted.  Rather, we assume that the appealing party is entitled to the 'relief sought,' and then we ask whether obtaining the relief would matter."  *Stor-N-Lock Partners #15, LLC v. City of Thornton*, 2018 COA 65, ¶ 39.  So long as the parties have a concrete interest, no matter how small, in the outcome of the litigation, a case is not moot.  *See DePriest v. People*, 2021 CO 40, ¶ 8.

¶ 24    Although Ozborn's original complaint requested injunctive relief to compel OARC to provide accommodations for the July 2024

bar exam, claim one of the amended complaint also sought statutory penalties, nominal damages, and attorney fees and costs for the injuries Ozborn allegedly suffered as a consequence of the June 13 denial. Although any request for injunctive relief relative to the July 2024 bar exam certainly would be moot, Ozborn no longer seeks that relief. But we fail to see, and OARC does not explain, why the other requested forms of relief cannot be afforded if Ozborn is able to prove the wrongful denial of his request for accommodations and his resulting damages. *See Urbina*, ¶ 22. Thus, we cannot affirm the district court's dismissal of claim one as moot.

### B. Failure to State a Claim

¶ 25 OARC next contends that we may affirm the district court's dismissal of claim one on the alternative basis that Ozborn failed to state a claim. We disagree.

### 1. Standard of Review and Applicable Law

¶ 26 We review de novo a trial court's ruling on a C.R.C.P. 12(b)(5) motion to dismiss for failure to state a claim upon which relief may be granted, applying the same standards as the trial court. *Norton v. Rocky Mountain Planned Parenthood, Inc.*, 2018 CO 3, ¶ 7.

12

¶ 27    The purpose of a Rule 12(b)(5) motion to dismiss is to test the formal sufficiency of a plaintiff's complaint. *Wagner v. Grange Ins. Ass'n,* 166 P.3d 304, 306 (Colo. App. 2007). A plaintiff must plead sufficient facts, that if taken as true, establish plausible grounds to support a claim for relief. *Patterson v. James,* 2018 COA 173, ¶ 23 (citing *Warne v. Hall,* 2016 CO 50, ¶ 24). Rule 12(b)(5) motions are generally viewed with disfavor. *Pub. Serv. Co. of Colo. v. Van Wyk,* 27 P.3d 377, 386 (Colo. 2001).

¶ 28    To resolve a Rule 12(b)(5) motion, a court may consider matters stated within the complaint itself, *Van Wyk,* 27 P.3d at 386, and documents attached to or referred to within the complaint, *Prospect Dev. Co. v. Holland & Knight, LLP,* 2018 COA 107, ¶ 11. The court must accept as true the factual allegations in the complaint, viewing them in the light most favorable to the plaintiff. *Norton,* ¶ 7. But the court is not required to accept as true bare legal conclusions, *see id.,* or conclusory statements or allegations lacking any factual support, *see Warne,* ¶ 27. The court may not weigh evidence or make findings of fact when resolving a Rule 12(b)(5) motion. *Medina v. State,* 35 P.3d 443, 452 (Colo. 2001).

### 2. Claim One Does Not Fail to State a Claim

¶ 29 OARC contends that claim one fails under C.R.C.P. 12(b)(5) because it granted Ozborn accommodations for the July 2024 bar exam, yet Ozborn declined to take the exam. We are not persuaded.

¶ 30 CADA is "substantially equivalent" to the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101 to 12213, and should be interpreted consistently with the ADA whenever possible. *Stalder v. Colo. Mesa Univ.*, 2024 COA 29, ¶ 25. To prove a "basic ADA violation, [a plaintiff] must show that he: (1) has a disability; (2) was otherwise qualified to get some public program, service, or activity; and (3) was denied that program, service, or activity on the basis of his disability." *Koon v. North Carolina*, 50 F.4th 398, 405 (4th Cir. 2022). "The ADA was enacted not only to remedy discrimination in the form of intentional exclusion, but also to mandate reasonable modifications to existing policies or otherwise to reasonably accommodate individuals with disabilities." *Colo. State Bd. of Med. Exam'rs v. Ogin*, 56 P.3d 1233, 1236 (Colo. App. 2002). To that end, one way to prove the third prong — denial on the basis of disability — is to prove a failure to provide reasonable accommodations. *See Koon*, 50 F.4th at 405.

¶ 31    In his amended complaint, Ozborn alleged that he is a person with a disability, detailing his diagnoses and the test-related accommodations he received in law school.  It appears to be undisputed that OARC (or the bar exam) is a place of public accommodation and that Ozborn was otherwise qualified to take the bar exam.  And Ozborn alleged that he requested and was denied reasonable accommodations for the July 2024 bar exam.  Ozborn plainly stated a claim for discrimination based on a failure to provide reasonable accommodations.

¶ 32    Even so, OARC argues that Ozborn cannot prove that it failed to reasonably accommodate his disability because, even though it initially denied his request, it agreed to provide the requested accommodations over a month before the July 2024 exam was scheduled to occur, and Ozborn nonetheless declined to take the exam.  OARC cites an unreported case from the Southern District of Ohio discussing reasonable accommodations in the context of employment law to assert that the "law is clear that once [a plaintiff] rejects a reasonable accommodation[,] the [defendant's] duty to reasonably accommodate the [plaintiff] is fulfilled."  *Vinson v. Grant/Riverside Methodist Hosps.*, No. C2-99-1358, 2001 WL

15

1681125, at *14 (S.D. Ohio Aug. 30, 2001) (unpublished opinion). Notably, the employer in *Vinson* never outright denied the employee's request for accommodation; instead, the employer offered a reasonable accommodation that the employee rejected for reasons unrelated to her disability.  *See id.*

¶ 33     Even assuming we should import this concept — that a plaintiff's rejection of a reasonable accommodation satisfies the defendant's duty to reasonably accommodate — from the employment discrimination context, we are not persuaded it disposes of Ozborn's claim.  Here, OARC initially denied Ozborn's request in its entirety and definitively informed him that it would "administer [his] exam under standard testing conditions."  True, OARC later reversed its decision and offered Ozborn the requested accommodations.  But Ozborn alleged that he was unable to accept the accommodations because OARC's denial derailed his efforts to study, caused him "fear, frustration, anger, and anxiety," and rendered him unprepared to take the bar exam.  Under these circumstances, we are not willing to decide as a matter of law that Ozborn rejected the accommodations and relieved OARC of its duty to accommodate.

¶ 34 Moreover, section 24-34-601(2)(a) not only prohibits the actual denial of the "full and equal enjoyment of . . . a place of public accommodation" on the basis of disability, but it also prohibits a person from communicating "that the full and equal enjoyment of . . . a place of public accommodation will be refused, withheld from, or denied" based on disability. "[E]ach violation" of the statute entitles "[a] person aggrieved" to the statutory fine Ozborn seeks. § 24-34-602(1)(a). Whether OARC's initial denial violated section 24-34-601(2)(a) independent of its later provision of the requested accommodations and whether OARC's decision to accommodate Ozborn a month before the bar exam satisfied its duty to provide reasonable accommodations are also not questions we will decide as a matter of law.

¶ 35 We conclude that we cannot affirm the district court's dismissal of claim one on the alternative basis that it fails to state a claim under C.R.C.P. 12(b)(5).

### III. Claim Two

¶ 36 Ozborn contends that the district court erred by dismissing his claim that OARC retaliated against him for failure to state a claim under C.R.C.P. 12(b)(5). We disagree.

¶ 37    Under CADA, "[i]t is a discriminatory practice and unlawful for any person to discriminate against any individual" because that individual "opposed any practice made a discriminatory practice" or because such individual "made a charge . . . or participated in any manner in an investigation, proceeding, or hearing conducted pursuant to" this statute.  § 24-34-601(2.5).

¶ 38    Again, we interpret CADA consistently with the ADA whenever possible.  *Stalder*, ¶ 25.  To prove a claim of retaliation under the ADA, the plaintiff must show that (1) he was engaged in conduct protected by the ADA; (2) he suffered an adverse action after engaging in the protected conduct; and (3) there was a causal link between the protected activity and the adverse action.  *See Zimmeck v. Marshall Univ. Bd. of Governors*, 106 F. Supp. 3d 776, 780 (S.D.W. Va.), *aff'd*, 632 F. App'x 117 (4th Cir. 2015); *A. v. Hartford Bd. of Educ.*, 976 F. Supp. 2d 164, 192 n.12 (D. Conn. 2013); *see also Conner v. Schnuck Mkts., Inc.*, 121 F.3d 1390, 1394 (10th Cir. 1997) (applying the same elements in an employment action alleging retaliation).

¶ 39    Generally, an adverse action denotes conduct that is "materially adverse" such that it would dissuade a reasonable

person from making or supporting a charge of discrimination. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). Courts must determine whether an action is adverse based on the context of the circumstances. *Id.* at 69. Although the subjective feelings of a plaintiff are not considered, courts do look at the plaintiff's "personal circumstances." *Freelain v. Village of Oak Park*, 888 F.3d 895, 902 (7th Cir. 2018). Thus, "[t]he question is whether a reasonable person in the plaintiff's circumstances would be dissuaded from engaging in protected activity." *Id.* "If an individual's hypersensitivity causes him . . . to suffer tangible psychological harm that a reasonable person would not suffer under similar circumstances, then that individual cannot seek protection from the ADA's anti-retaliation provision." *Mondzelewski v. Pathmark Stores, Inc.*, 162 F.3d 778, 787 n.5 (3d Cir. 1998).

¶ 40  In claim two, Ozborn alleged that OARC retaliated against him in violation of section 24-34-601(2.5) by (1) "improperly using the character and fitness department of the OARC to contact his references to gather information about his mental health diagnoses and reasonable accommodations after he filed a complaint and preliminary injunction motion" and (2) "[i]ntentionally causing [him]

heightened fear[] and anxiety about his character and fitness evaluation by improperly using the character and fitness arm of the OARC and contacting individuals [he] did not list as part of his character and fitness evaluation."

¶ 41 The district court essentially reasoned that OARC's action — using its character and fitness investigators to contact references Ozborn had provided — was not "materially adverse." Instead, the court reasoned that doing so "seems like a good practice." In other words, the court concluded as a matter of law that OARC's action would not dissuade a reasonable person from making a charge of discrimination. *See White*, 548 U.S. at 57; *Mondzelewski*, 162 F.3d at 787 n.5. We agree.

¶ 42 As an initial matter, it is undisputed that Ozborn provided the references that OARC attempted to contact. The references were identified as people who were available to discuss the nature of Ozborn's diagnoses and provide additional, firsthand observations of Ozborn's challenges. Although Ozborn alleged that OARC had a character and fitness investigator reach out to his references, he did not allege facts in his amended complaint to establish that doing so was improper. He also did not allege that the investigator actually

spoke with any of the references. And he did not allege that the investigator learned anything about Ozborn that OARC used to evaluate his character and fitness. Ozborn argues that OARC had no legitimate reason to contact his references after it denied his accommodation request, but it is undisputed that OARC granted Ozborn's accommodation request after attempting contact.

¶ 43 Furthermore, the thrust of Ozborn's claim is that because OARC used a character and fitness investigator to contact his references — rather than some other more suitable OARC employee Ozborn does not identify — it is reasonable to infer that OARC contacted the references to intimidate him rather than to gather information about his accommodations request. But that assertion is speculative and conclusory. Ozborn alleges no facts to support it, so we need not accept it as true. *See Warne*, ¶ 27. In the end, we agree with the district court that no reasonable person in Ozborn's circumstances would be dissuaded from engaging in protected activity because OARC attempted to contact references he provided. *See Freelain*, 888 F.3d at 902. Thus, we affirm the court's dismissal of claim two. *See Patterson*, ¶ 23.

## IV. Claim Three

¶ 44　Ozborn contends that the district court erred by dismissing claim three under C.R.C.P. 12(b)(1) because he lacked standing. We disagree.

¶ 45　Claim three alleged that OARC discriminated against Ozborn relative to the February 2025 and future bar exams in violation of section 24-34-601(2)(a) by (1) "[f]ailing to change its policies on how it internally reviews requests for accommodations or any subsequent appeals"; and (2) failing to follow its own policies by issuing a second determination on [his] appeal," which demonstrates OARC's "propensity to ignore and violate its own policies" and "does not ensure that the OARC will provide [him] with accommodations on the February 2025 bar examination."

¶ 46　The court determined that Ozborn failed to allege an injury in fact because OARC confirmed it would provide him accommodations for the February 2025 bar exam and any injury based upon a future exam was too speculative and tenuous to constitute an injury in fact. We agree.

¶ 47　Ozborn's amended complaint did not allege that OARC denied his request for accommodations on the February 2025 bar exam.

22

Indeed, he acknowledged in his response to the motion to dismiss that OARC had granted that request. *See Kinder Morgan*, 143 P.3d at 1078 (a court may consider evidence outside the pleadings to determine jurisdictional issues). Because OARC never denied Ozborn a requested accommodation with respect to the February 2025 bar exam, Ozborn never suffered an injury as alleged in claim three. *See Hickenlooper*, ¶ 9 (explaining that the injury in fact requirement ensures actual controversy). And any allegation based upon a "future bar exam" is too speculative to establish standing. *See Ainscough*, 90 P.3d at 856 (Standing cannot be conveyed by "the remote possibility of a future injury" or by "an injury that is overly 'indirect and incidental' to the defendant's action." (citation omitted)). Thus, we affirm the court's dismissal of claim three.

## V.    Disposition

We affirm the district court's dismissal of claims two and three but reverse the dismissal of claim one. We remand the case for further proceedings consistent with this opinion.

JUDGE FREYRE and JUDGE SCHUTZ concur.